<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID J. TAYLOR,<br><br>               Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No.:  16-cv-05033 (PAZ)<br><br>**OPINION** |

**APPEARANCES:**

ABRAHAM S. ALTER
LANGTON & ALTER
P.O. BOX 1798
1600 ST. GEORGES AVENUE
RAHWAY, NJ  07065
      On behalf of Plaintiff

JAMES A. McTIGUE
SPECIAL ASSISTANT U.S. ATTORNEY
c/o SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, PA  19101
      On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff David J. Taylor for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (42 U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the

Commissioner"), opposes Plaintiff's appeal.  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's prior decision, and the pleadings, memoranda, and oral arguments by the parties, the Court decides this matter pursuant to Rule 78(a) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case for further proceedings in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On March 28, 2012, Plaintiff filed an application for SSI benefits alleging a disability onset date of November 20, 2007.  (R. 138-143.)[1]  On August 7, 2012, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 52-63.)  Plaintiff filed for reconsideration, and his application was again denied on December 21, 2012.  (R. 64-73.)

Plaintiff requested a hearing, which was held on February 27, 2014; Plaintiff was represented by a non-attorney representative.  (R. 23-51.)  The ALJ issued a decision on November 12, 2014, again denying Plaintiff's application.  (R. 8-22.)  The Appeals Council denied Plaintiff's request for appeal on June 17, 2016 (R. 1-5), thereby affirming the ALJ's November 2014 decision as the "final" decision of the Commissioner.

On August 17, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3).  ECF No. 1.  On April 20, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 13.[2]  The case

---

[1] "R." refers to the continuous pagination of the administrative record.  ECF No. 7.

[2] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

was reassigned to the undersigned Magistrate Judge on April 23, 2018.  On May 9, 2018, the Court

heard oral arguments during a non-evidentiary hearing.  ECF No. 17.

## II.     LEGAL STANDARD

### A.     <u>Standard of Review</u>

This Court has plenary review of legal issues decided by the ALJ in reviewing applications

for SSI benefits.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews

the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v.

Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial

evidence "does not mean a large or considerable amount of evidence, but rather such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v.

Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel.

K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere

scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be

set aside merely because the Court "acting de novo might have reached a different conclusion."

*Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*,

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial

evidence, we are bound by those findings, even if we would have decided the factual inquiry

differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL

1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of

the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and

entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays.  *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits."  *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.     Standard for Awarding SSI Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for SSI benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant is disabled only if her/his physical or mental impairments is "of such severity that [s/]he is not only unable to do his previous work, but cannot, considering [her/]his age, education, and work experience, engage in any other kind of work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

In determining whether the claimant's physical or mental impairment is of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ must consider the combined effect of all of impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity.  If the ALJ finds a medically severe combination of impairments, then the combined impact of such impairments must be considered throughout the disability evaluation process.  20 C.F.R. § 416.923(c).

The disability evaluation process for determining an adult's claim for SSI benefits involves a five-step sequential inquiry. 20 C.F.R. § 416.920(a).[3] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. 20 CFR § 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id*. §§ 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. § 416.920(c). Any doubt as to whether this showing has been made must be resolved in the claimant's favor. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (internal quotations omitted). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities or impairs a claimant's capacity to cope with mental demands of working. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. § 416.922. If

---

[3] A new regulation governs the weight attributed to certain evidence for claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (citing 20 C.F.R. § 416.920(c) ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.")). This case arises from a claim filed on March 28, 2012, and is therefore analyzed by this Court – as it was by the ALJ – under the prior regulation, now codified at 20 C.F.R. § 416.927 ("Evaluating opinion evidence for claims filed before March 27, 2017.").

the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 416.920(d), 416.925, 416.926.  If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence.  *Id*. § 416.926(b)(2).  If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled as long as the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months.  *Id*. § 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform the past relevant work.  20 C.F.R. §§ 416.920(e) & (f).  RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the disability date.  In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  *Id*. §§ 916.945, 916.960.  If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, is capable of performing other jobs that exist in significant

numbers in the national economy.  20 C.F.R. § 416.920(g).  If the claimant is incapable of doing so, then the claimant is presumed to be disabled as long as his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. Otherwise, the claimant is not disabled.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment(s) and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.* at § 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id.* at § 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. § 416.969a(b). The Grid reflects various combinations of RFC, age, education, and work experience, and directs a finding of disabled or not disabled for each combination.  However, if the claimant also has any non-exertional limitations or cannot perform substantially all of the exertional demands at a given level, then the Grid is used as a framework for decision-making unless there is a rule that directs a finding of disabled without considering the additional non-exertional or exertional limitations.  *Id.*

§ 416.969a(d).   If the claimant has solely non-exertional limitations, then the Grid provides a framework for decision-making.  *Id*. § 416.969a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was represented for the hearing by non-attorney Adolph Delbridge.  (R. 11.)  At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since filing his SSI application on March 28, 2012.  (R. 13.)  At Step Two, the ALJ determined that Plaintiff had two severe impairments:  "residuals of a stabbing in the left leg; and obesity."  (R. 13 (finding that Plaintiff's alleged "depression" was not severe).)  At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a Listing.  (R. 13-14.)  At Step Four, the ALJ determined that Plaintiff had the RFC "to perform a compromised range of light work as defined in 20 C.F.R. 416.967(b)."   (R. 14.)  Specifically:

> [Plaintiff] is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given except that the claimant is unable to perform pushing and pulling with the left leg.  Moreover, regarding the postural and environmental demands of work, the claimant is able to perform jobs that require only occasional use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; that require unlimited balancing, frequent, occasional kneeling, but no crouching, and/or crawling; and that require no exposure to unprotected heights, hazards or dangerous machinery.

(R. 14.)  As Plaintiff had no past relevant work, the ALJ moved to Step Five.  Based on post-hearing interrogatory responses from the VE, the ALJ "conclude[d] that, considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 17.)  Accordingly, the ALJ found that Plaintiff was not disabled.

Plaintiff contends that he was prejudiced by incompetent representation and the ALJ's conduct.  ECF. No. 10 at 17, 20-27.  Plaintiff further contends that the ALJ erred at Steps Two through Five of the disability evaluation process.  Plaintiff argues that the ALJ erroneously found at Step Two that Plaintiff's alleged depression was not severe and failed to consider Plaintiff's other mental impairments and his left chronic sciatic neuropathy of the peronal division.  *Id*. at 10-12, 14-16, 28-30.  Plaintiff argues that the ALJ's analysis at Step Three was erroneously limited to Listing 1.08 and failed to consider in combination all of Plaintiff's impairments (including his mental impairments and his obesity).  *Id*. at 12, 16, 30-34.  Plaintiff argues that the ALJ's RFC determination at Step Four was "without evidentiary rationale" and rested on "ALJ guesswork, 'lay speculations' and contradictory findings."  *Id*. at 35-37, 39.  Plaintiff argues that at Step Five the ALJ's hypothetical questioning of the VE failed to reflect all of Plaintiff's impairments, and that "the VE's testimony contradict[ed] the DOT and the Commissioner's adopted understandings of the DOT in the Social Security Rulings."  *Id*. at 38, 40.

Defendant contends that Plaintiff was adequately represented and was not prejudiced by the ALJ's conduct.  ECF No. 11 at 8-11.  Defendant further contends that the ALJ's analysis of the decision evaluation process does not warrant reversal or remand.  Defendant argues that at Step Two the ALJ appropriately evaluated Plaintiff's alleged impairments and, alternatively, that the errors about which Plaintiff complains were harmless because the ALJ nevertheless found some severe impairments.  *Id*. at 11-14.  Defendant argues that at Step Three Plaintiff did not establish that he could meet Listing 11.14 criteria, and that the ALJ adequately considered Plaintiff's alleged mental impairments and obesity.  *Id*. at 14-17.  Defendant argues that at Steps Four and Five the ALJ's RFC determination was "thoroughly explained" and "supported by the medical record[,]" and that the errors about which Plaintiff complains were harmless because the VE identified at

least one job within Plaintiff's alleged work capacity existing in sufficient numbers in the national economy. *Id*. at 18-21.

## IV.    DISCUSSION

### A.    Plaintiff Waived His Right to Counsel But Was Prejudiced By The ALJ's Failure To Develop The Record.

Although there is no constitutional right to counsel at a social security disability hearing, a claimant "does have a statutory and regulatory right to counsel at such a hearing." *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008) (citing 42 U.S.C. § 406 and 20 C.F.R. § 416.1505). A pro se claimant "must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver." *Id*. (citing *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)). But an invalid waiver of counsel is not itself a sufficient justification for remand. Rather, remand is proper where the lack of counsel prejudiced the claimant. *Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190-91 (3d Cir. 2003) (citing *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980)). Prejudice may be established if the ALJ failed "to help the claimant develop the administrative record." *Vivaritas*, 264 F. App'x at 157-58 (ALJ "'must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts'" on behalf of pro se claimant) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)); *see Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (ALJ must "assume a more active role when the claimant is unrepresented").

"A determination of whether the claimant waived the right to counsel knowingly and intelligently determines who has the burden of demonstrating whether remand is appropriate." *Vivaritas*, 264 F. App'x at 158. If the ALJ did not obtain a valid waiver of counsel, "the burden is on the Commissioner to show the ALJ adequately developed the record." *Id*. ("While a claimant represented by counsel is presumed to have made [her/]his best case before the ALJ, no such

presumption attaches to an unrepresented claimant.") (quotations omitted); *see Carmichael v. Barnhart*, 104 F. App'x 803, 805 (3d Cir. 2004) (claimant represented by non-attorney was not entitled to remand for ineffective assistance of counsel where Commissioner established that ALJ fully developed record).

The Third Circuit holds that correspondence from the Commissioner advising the claimant of the right to be represented by an attorney or other representative "*alone* shows that [claimant] was given adequate notice of [her/]his right to counsel." *Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 191 (3d Cir. 2003) (emphasis added). Plaintiff was advised of his right to legal counsel in the Notice of Disapproved Claim dated August 7, 2012 (R. 75-76), and in the Notice of Reconsideration dated December 21, 2012 (R. 83). Plaintiff signed a document dated February 15, 2013, appointing Mr. Delbridge as representative. Mr. Delbridge signed the document on the same date and clearly checked the box indicating that he was not an attorney. (R. 85.) By letter dated February 25, 2013, the Commissioner provided Plaintiff with an eight-page document – including an attachment labeled "Your Right to Representation" – that expressly explained the right to legal counsel for the hearing. (R. 89-96.) Plaintiff thus received sufficient notice of his right to be represented by an attorney to support a valid waiver of counsel.[4]

Plaintiff mistakenly invokes Seventh Circuit precedent requiring ALJs to explain to pro se claimants "'(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" *Skinner v. Astrue*, 478 F.3d 836, 841

---

[4] Plaintiff's brief posits that it remains an "open question" whether Plaintiff knew that Mr. Delbridge was not an attorney. ECF No. 10 at 25. There is no such question. Plaintiff bears the burden of establishing that the ALJ failed to obtain a valid waiver of counsel, and Plaintiff points to no evidence in the record – and offers no evidence on appeal – reflecting a misunderstanding of this nature.

(7th Cir. 2007) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)); *see* ECF No. 10 at 22-24.  "Although [the Third Circuit] ha[s] referred to decisions by other courts of appeals in describing the standards for evaluating social security appeals, [the Third Circuit] ha[s] not required that ALJs explain each of these listed items that [Seventh Circuit] case law requires." *Vivaritas*, 264 F. App'x at n.1; *accord McGrew v. Colvin*, No. 13-cv-0144 (AJS), 2013 WL 2948448, at *5 (W.D. Pa. 2013) ("The [Third Circuit] has declined to adopt a rigid protocol for an ALJ to follow when obtaining a waiver of representation.") (citing *Vivaritas*, 478 F. App'x at n.1)).

Plaintiff's reliance on the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") – which provides that "the ALJ must secure on the record an unrepresented claimant's acknowledgement of the right to representation and affirmation of the claimant's decision to proceed without a representative" – is also misplaced.  ECF No. 10 at 24-25 (quoting HALLEX-I-2-6[-]52A).  Manuals promulgating official Social Security policy and operating instructions, such as HALLEX, "do not have the force of law."  *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)); *see also Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 854 (3d Cir. 2007).

Moreover, Plaintiff was not an unrepresented claimant; he chose to be represented by a non-attorney.  *Cf.* HALLEX-I-2-6-52B (ALJ might ask *unrepresented* claimant on record whether s/he "receive[d] the hearing acknowledgement letter and its enclosure(s) and "underst[ood] the information contained in that letter, specifically concerning representation") (emphasis added).  Plaintiff's reliance on cases in which the ALJ discussed waiver with unrepresented claimants is thus equally misplaced.  ECF No. 10 at 22-23 (citing *Vivaritas* (264 F. App'x at 158); *Yakely v. Astrue* (No. 12-cv-00857 (MLC), 2013 WL 1010671, at *2 (D.N.J. Mar. 13, 2013); *Curry v. Barnhart*, No. 05-cv-2350 (TRR), 2006 WL 1192920, at *3 (E.D. Pa. Jan. 25, 2006)).

Notwithstanding the Court's finding that Plaintiff validly waived his right to legal counsel, the Court finds that remand is warranted because Plaintiff was prejudiced in Steps Two through Five by the ALJ's failure to "probe into, inquire of, and explore for all the relevant facts" as required in a pro se social security disability hearing. *Reefer*, 326 F.3d at 380. This includes failure to order consultative examinations by physicians specializing in Plaintiff's alleged impairments. *See* 20 C.F.R. 416.917; *accord Holladay v. Bowen*, 848 F.3d 1206, 1209 (11th Cir. 1988); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir 1981).[5]

**B.  Step Two Analysis.**

The parties agree with the ALJ's finding at Step Two that Plaintiff had at least one severe impairment (i.e., obesity). Plaintiff argues that the ALJ erred at this Step: (1) in failing to analyze specifically Plaintiff's left chronic sciatic neuropathy; (2) in failing to analyze Plaintiff's various alleged personality disorders; and (3) in finding Plaintiff's alleged depression to be non-severe. An ALJ's failure to consider the severity of an impairment or an ALJ's determination that an impairment is non-severe is not ordinarily dispositive at Step Two if the ALJ has found at least one severe impairment. This is because the ALJ is required to consider the combined effects of

---

[5] Plaintiff alleges that he was also prejudiced by the ALJ's "needless pejorative lecturing, smacking of bias" and intentional misconduct against Plaintiff and Mr. Delbridge. ECF No. 10 at 17, 20-21 ("It is hardly conceivable that this insult would have been thrown in the presence of an attorney or tolerated without comment or complaint by an attorney."); *see id.* at 17 ("it is unmistakable the ALJ took advantage of [P]laintiff's 'non-attorney representative'"). The Court reviewed the entire hearing transcript and finds no fault in the ALJ's conduct. *See Fraser v. Astrue*, 373 F. App'x 222, 225 (3d Cir. 2010) (rejecting argument that ALJ was biased because "[e]ven assuming, however, that the ALJ was rather brusque, there is no indication that there was any conflict of interest or inability to render a fair judgment"); *Morris v. Comm'r of Soc. Sec.*, No. 17-cv-757 (KM), 2018 WL 395736, at *10 (D.N.J. Jan. 12, 2018) (no prejudice where ALJ mailed VE interrogatory responses to pro se claimant accompanied by notification of right to "request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements"). Even if the ALJ erred in her treatment of Plaintiff and Mr. Delbridge, any such error will be remedied during further proceedings after remand in which Plaintiff is represented by an attorney.

all impairments – regardless of severity – at Steps Three through Five.  20 C.F.R. § 416.923; *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (harmless error where ALJ erroneously found at Step Two that some, but not all, of claimant's impairments were not severe); *Ross v. Astrue*, No. 08-cv-5282 (SDW), 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (same).

The Court concludes that, even if the ALJ failed to analyze at Step Two Plaintiff's alleged left chronic sciatic neuropathy of the peronal division, such failure was harmless error, because the ALJ in fact considered this impairment at Steps Three through Five.  (R. 16.)[6]  The Court is therefore not required to decide the parties' dispute in this regard, although the Court will address below the sufficiency of the ALJ's consideration in subsequent Steps.

In contrast, the ALJ's failure to analyze Plaintiff's various alleged personality disorders and the ALJ's finding that Plaintiff's alleged depression was non-severe effectively "screened out" of the remaining disability evaluation process at Step Two all of Plaintiff's mental impairments. *Melendez v. Colvin*, No. 15-cv-3209 (KM), 2016 WL 4718946, at *4 (D.N.J. Sep. 8, 2016).  The ALJ's Step Two analysis reads in its entirety as to Plaintiff's alleged mental impairments:

> The record also makes reference to depression.  Although the medical record may reference this impairment, there is no evidence to show that this impairment has had the requisite limiting effects on the claimant's ability to perform basic work activities.  There is only one record with regards to depression and the underlying influence appears to be alcohol (Exhibit 11F).  He testified at the hearing that he is depressed; however, he stated that he does not take any of the medication that has been prescribed for his depression.  Moreover, the claimant voluntarily withdrew from his counseling and was noted to have numerous absences (Exhibit 11F).  In light of these considerations, this additional impairment is not found to be severe.

---

[6] Defendant argues that the ALJ did not fail to analyze this impairment at Step Two, but "merely called [it] by a different, broader name ('residuals from a stabbing in his left leg')."  ECF No. 11 at 11.  On remand, the ALJ should clarify whether Plaintiff's left chronic sciatic neuropathy of the peronal division is severe.

(R. 13.)[7]   None of Plaintiff's mental impairments was subsequently mentioned in the ALJ's decision.   Put another way, the ALJ simply did not analyze at Steps Three through Five the potential effect of Plaintiff's mental impairments, alone or in combination with each other and with Plaintiff's physical impairments.   This was not harmless error.   *See Melendez*, 2016 WL 4718946, at *4 (rejecting Commissioner's harmless error argument and reviewing non-severity finding where ALJ omitted subsequent analysis of non-severe impairments).

The Court finds that remand is necessary to remedy the ALJ's failure to discuss Plaintiff's alleged personality disorders at Step Two.   *See Morris*, 2018 WL 395736, at *7 (remanding because pro se plaintiff was prejudiced where ALJ "did not even mention" certain alleged impairments at Step Two).   Given the low threshold at Step Two, the Third Circuit's directive that doubts be resolved at this Step in favor of the claimant, and the ALJ's enhanced duty to a pro se claimant, the Court also finds that the ALJ's determination that Plaintiff had no severe depressive disorders was not supported by substantial evidence.   This also must be remedied.   On remand, the ALJ should assess the entire record in connection with all of Plaintiff's alleged mental impairments, including evidence about Plaintiff's reasons for stopping his medication and Plaintiff's conduct when he is not medicated.[8]

---

[7] Exhibit 11F consisted of Plaintiff's medical records from UCPC Behavioral Healthcare for the period between September 13, 2013 through November 25, 2013.   (R. 355-85.)   These records expressly addressed various personality disorders and depressive disorders.

[8] An ALJ's lay opinion cannot be used in the disability evaluation process.   *See Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987) ("We have on numerous occasions advised ALJs not to rely on their own expertise in evaluating the medical condition of claimants, but to base their appraisals on testimony in the record.") (citations omitted).   The Court cautions the Commissioner to be mindful on remand of colloquy similar to the following excerpt from the hearing transcript:

Q   Well, maybe they could give you something else because, you know, if you have this, it's only – it's a chemical – it's not anything like bad.   It's just you have a chemical imbalance in your brain –

A   Right.

**C.  Step Three Analysis.**

Plaintiff argues that at Step Three, the ALJ:  (1) analyzed the wrong leg impairment; (2) failed to combine all of Plaintiff's alleged impairments regardless of severity; and (3) failed to consider sufficiently the potential impact of Plaintiff's obesity.  The Court agrees with Plaintiff as to all three arguments.

First, the ALJ's Listing analysis consists of a single sentence stating that Plaintiff's "leg wound has not required continuing surgical management to restore major function as required by [L]isting 1.08 for soft tissue injury."  (R. 13.)  Although supported by substantial evidence, this finding was of no consequence because Listing 1.08 – which identifies "burns" as an example of a covered impairment (20 C.F.R. pt. 404, subpt. P, app. 1, §1.08) – is not relevant here.  "[I]t is the ALJ's responsibility ... to identify the relevant listed impairment(s) and develop the arguments both for and against granting benefits."  *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151-52 (3d Cir. 2008) (quoting *Burnett*, 220 F.3d at n.2).  Listing 11.14 for "peripheral neuropathy" is more closely aligned with Plaintiff's leg impairment and requires:

---

Q   – and the medicine helps to keep you on an even keep so there's a bunch of different medicines they can give you that won't – that may not have those same side effects.

A   Yeah.

Q   Some give you the dry mouth, some give you problems, you know, with sex drive, those kinds of things.  When you see the doctor, you have to make sure that they – they can test you out on some other ones – Paxil – maybe a low dose of Paxil or something like that so that you can keep things in check –

A   Yeah.

\*\*\*

Q   Just do what you need to do.  See about taking the – taking – see about getting – you have to get on some kind of low dose medicine again because that'll keep your moods – your moods –

A   Right.

(R. 43-44.)

A.  Disorganization of motor function in two extremities (*see* 11.00D1), resulting in an extreme limitation (*see* 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

OR

B.  Marked limitation (see 11.00G2) in physical functioning (*see* 11.00G3a), and in one of the following:
1.  Understanding, remembering, or applying information (see 11.00G3b(i)); or
2.  Interacting with others (*see* 11.00G3b(ii)); or
3.  Concentrating, persisting, or maintaining pace (*see* 11.00G3b(iii)); or
4.  Adapting or managing oneself (*see* 11.00G3b(iv)).

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14.  However, the record is not sufficiently developed to determine whether substantial evidence would support a finding that Plaintiff's leg impairment meets or medically equals this Listing.  The relevant medical evidence thus far consists of: Dr. Chinweike Izeoju's treatment notes from May 2012 (R. 269-72); the opinions of two Disability Determination Services ("DDS") consultants (R. 52-62, 64-72); an EMG study from February 2013 revealing abnormal findings consistent with left chronic sciatic neuropathy (R. 277-78); and physical therapy records from May 2013 through October 2013 (R. 292-344).  The DDS consultants never examined Plaintiff and, critically, provided their opinions before Plaintiff's EMG study.

Second, where a claimant alleges multiple impairments, the ALJ must "combine [the claimant's] many medical impairments and compare them" to the Listings.  *Torres*, 279 F. App'x at 152.  The ALJ's Step Three combined impairment analysis consisted of a single sentence – without substantive discussion – that "claimant does not have … [a] combination of impairments that meets or medically equals the severity of" any Listing.  (R. at 13.)  This conclusory finding is inadequate because it is "beyond meaningful judicial review."  *Burnett*, 220 F.3d at 119; *see, e.g.*, *Austin v. Comm'r of Soc. Sec.*, No. 16-cv-1462 (ES), 2018 WL 878525, at *5-*6 (D.N.J. Feb. 14, 2018); *Morris*, 2018 WL 395736, at *8.  Indeed, there is nothing for the Court to review, because the ALJ discussed Plaintiff's leg impairment individually (as to an irrelevant Listing) with no

explanation for why that impairment, in combination with Plaintiff's alleged mental impairments and obesity, fails to meet or medical equal any Listing.

Third, although obesity is no longer a listed impairment, the ALJ must "consider [obesity's] effects when evaluating disability" and recognize that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Titles II & XVI: Evaluation of Obesity*, SSR 02–1p, 2002 WL 34686281, at *1 (S.S.A. Sep. 12, 2002) ("obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing"). In the Step Three obesity analysis, the ALJ asserted that she was analyzing Plaintiff's impairments "pursuant to the extensive and detailed guidelines set forth in SSR 02-1p," recited some of those guidelines, and then concluded:

> These considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process, even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity. Thus, I have fully considered obesity in the context of the overall record evidence in making this decision. While the claimant's obesity when considered in conjunction with the residuals of the gunshot injury would not allow him/her to perform the exertional demands of work at the very heavy, heavy, medium levels, or even the full range of light work, as is more particularly discussed below, it would not prevent him from performing the demands of a reduced range of light work.

(R. 14.)[9]   The Court is not persuaded by Defendant's contention that this verbiage facilitates judicial review based on the record as a whole. The word "obesity" was never mentioned again in the ALJ's decision, and there was no ensuing discussion of the reasons that obesity would not prevent Plaintiff from performing a reduced range of light work. There can be no meaningful judicial review of the ALJ's assessment of obesity's effects on Plaintiff's impairments because, in

---

[9] The ALJ presumably intended to refer to "residuals" of Plaintiff's stabbing injury.

fact, there is nothing for the Court to review.  *See, e.g., Burnett*, 220 F.3d at 119; *Austin v. Comm'r of Soc. Sec.*, No. 16-cv-1462 (ES), 2018 WL 878525, at *5-*6 (D.N.J. Feb. 14, 2018); *Morris*, 2018 WL 395736, at *8.

The Court therefore finds, irrespective of the errors identified above in Step Two, that remand is necessary to conduct a new Step Three analysis.

**D.  Step Four Analysis.**

Although the Step Four analysis may change on remand after Steps Two and Three are considered anew in light of the Court's previous findings, the Court finds independent errors in the ALJ's RFC determination that also warrant remand.  Simply put, the Court is unable to determine whether the RFC determination was supported by substantial evidence because the ALJ's decision in this regard was incomplete and contradictory.

As threshold errors, (1) the ALJ's RFC determination failed to consider Plaintiff's alleged mental impairments, and (2) the potential impact of Plaintiff's obesity was not sufficiently explained by the ALJ's conclusory statement that "considering the claimant's leg pain combined with his obesity, the undersigned finds that the claimant is limited to the [RFC] outlined above and no less."  (R. 16.)  *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."); SSR 02-1p (ALJ must "consider the effects of obesity not only under the [L]istings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity"); *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d. Cir. 2009) (remand required where RFC determination failed to discuss combined effects of all impairments, including obesity).  A

21

third error involves Plaintiff's leg impairment and the ALJ's crediting of medical evidence that Plaintiff had a dropped left foot.  (R. 15.)  The ALJ decided against unanimous DDS medical opinions to the contrary that Plaintiff could occasionally climb ladders, ropes, or scaffolds if not exposed to unprotected heights.  (R. 14, 59-60, 69-70.)  The ALJ provided no reasoning for this deviation from the medical opinions, nor did she discuss what might constitute an "unprotected height."  Further, the ALJ found that Plaintiff's dropped left foot did not prevent the performance of jobs "that require unlimited balancing, frequent, occasional kneeling, but no crouching, and/or crawling."  (R. 14.)  It is unclear whether the ALJ's RFC determination permitted frequent or occasional unlimited balancing or permitted frequent or occasional kneeling.  It is also unclear why the ALJ determined that Plaintiff could sometimes kneel but never crouch.

As the ALJ noted, Plaintiff testified that he "cannot lift his foot up," "his condition is painful," and he has worn a knee brace for 4-5 years.  (R. 15.)  The ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. 15.)  However, no such explanation was provided.  To the contrary, the ALJ's decision advised that Dr. Izeoju's treatment notes indicated left leg pain and spasm/weakness in Plaintiff's left foot, with pain in Plaintiff's lumbar spine.  (R. 16.)  Further, Plaintiff's testimony was not inconsistent with the activities listed on his function report:  namely, eating, cleaning up, watching TV, reading, writing and playing video games.

Perhaps most troublesome, the ALJ's RFC determination was not based on any analysis of Plaintiff's most recent medical records beyond mere recitation of the fact that "[a]n EMG study was performed in February of 2013; it revealed abnormal findings consistent with left chronic sciatic neuropathy."  (R. 16.)  The ALJ did not endeavor to explain the potential impact of the

EMG study on Plaintiff's RFC and instead gave "significant weight" to the DDS opinions even though both were rendered before the EMG study.

### E.  **Step Five.**

Plaintiff argues that the ALJ's hypothetical questioning of the VE at Step Five failed to reflect all of Plaintiff's alleged impairments, and that the VE's interrogatory responses were not consistent with the DOT.  The Court declines to address these arguments because they well may be mooted on remand.

## V.      CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case for further proceedings in accordance with the preceding instructions and the accompanying Order.

Dated:   May 21, 2018                              _____s/ Paul A. Zoss_____
At Newark, New Jersey                         PAUL A. ZOSS, U.S.M.J.